# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

NORMA B. GILO,

        Plaintiff,

v.

                              **CASE NO.: 4:15cv291-RH/CAS**

DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA,

        Defendant.

_____/

## DEFENDANT'S TRIAL BRIEF

Defendant, Department of Corrections, State of Florida, by and through undersigned counsel, and pursuant to this Court's Order for Pretrial Conference [Doc. 21], files this brief and memorandum in support of trial set for the three-week period beginning May 16, 2016.

Plaintiff brings a three-count Amended Complaint alleging gender discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760 (Count I); pay discrimination, in violation of 29 U.S.C. § 206(d)(1), the Equal Pay Act (Count II); and retaliation, in

1

violation of 42 U.S.C § 2000 et seq., and in violation of the FCRA (Count III).

## Statement of Facts

Plaintiff's employment with the Florida Department of Corrections first began on September 18, 1998, when she was hired as a physician at Gulf Correctional Institution ("Gulf C.I.") in Gulf County, Florida. While working at Gulf C.I., Plaintiff received two Written Reprimands, the first for "cursing and throwing her items" and the second for acting "in an unprofessional manner towards another employee when she yelled and screamed at her. She retired on April 30, 2010. She was then rehired as a Chief Health Officer in 2010. The Florida Department of Corrections terminated Plaintiff on September 3, 2012, for insubordination after she refused to be temporarily reassigned to Holmes C.I.

## Plaintiff's Position as Chief Health Officer October 1, 2010- September 3, 2012

Plaintiff was hired again by the Florida Department of Corrections as a Senior Physician, Chief Health Officer ("CHO") at Northwest Florida Reception Center ("NWFRC") on October 1, 2010. Plaintiff's starting salary for this job was $120,000.14, in accordance with the Department pay rates for Board Eligible CHOs. CHOs are responsible for overseeing NWFRC's medical unit and referring patients that need specialized or acute care to the

Regional Medical Center ("RMC") hospital, as NWFRC's infirmary was only equipped for "very mild cases."

During Plaintiff's employment as a CHO some of Plaintiff's coworkers and management felt that the Plaintiff was unprofessional and disrespectful. Within weeks of being hired, Lori Pippin, an Advanced Registered Nurse Practitioner, who worked with Plaintiff, filed an incident report against Plaintiff on October 22, 2010. The incident report stated that Plaintiff yelled at an inmate, telling him "you are a murderer and don't deserve anything, and you don't deserve an ortho [sic] consult"; a corrections officer was called to respond to the incident. *Id.* The next Incident Report was filed against Plaintiff on October 25, 2010, when Pippin observed Plaintiff shouting at a wheelchair-bound inmate and pushing his leg, despite the inmate's statement that this was hurting him.

In addition to those cited above, there were an additional five incident reports filed by various employees against Plaintiff for her unprofessional and disrespectful conduct towards her co-workers and inmates and one written reprimand for shaking her fist and yelling at an inmate filed by Warden William Churchwell.

**<u>Do Not Resuscitate Order</u>**

On July 12, 2012, Lori Pippin filed another Incident Report after observing Plaintiff telling an inmate, "if you don't want to take your medication then sign this DNR [Do Not Resuscitate Order]." The inmate refused to sign the DNR, but Plaintiff signed the DNR and placed the document in the inmate's medical chart despite his refusal to sign the order.

Pippin faxed a copy of the unsigned DNR to Cindy Bruns, the Assistant Nursing Director for the Department. Ms. Bruns brought this to the attention of Plaintiff's supervisor, Dr. Hantz Hercule, the Regional Medical Director ("RMD") for Region 1, as well as his superior, Dr. Olugbenga Ogunsanwo, Assistant Secretary for Medical and Health Services for the Department.

On August 15, 2012, Dr. Hercule traveled to NWFRC to discuss Plaintiff's actions regarding the DNR. The meeting was attended by Plaintiff, Dr. Hercule, Warden William Churchwell, Assistant Warden Norma Kelly, and Monica Crutchfield, the Health Services Administrator for NWFRC. Plaintiff questioned the reason behind the meeting, asserted she had done nothing wrong, and suggested that Dr. Hercule and Dr. Ogunsanwo lacked any credentials to question Plaintiff. Plaintiff stated in

her Amended Answers to Interrogatories that, "[w]hen I questioned Dr. Hercule and asked to compare his credentials he felt challenged by this."

During this meeting, Dr. Hercule ordered Plaintiff to stop placing unsigned DNRs into inmates' medical charts and that she would be temporarily be reassigned to Holmes Correctional Institute ("Holmes C.I.") for a period of two weeks. Plaintiff refused to be temporarily reassigned and replied that she had a lot of work to do at NWFRC. She also stated "if you do not want me here, I will take annual leave." Plaintiff did not report any gender discrimination at the August 15 meeting. After the meeting concluded, Dr. Hercule wrote a letter stating that the Plaintiff was disrespectful and insubordinate with her comments and actions. In addition, Dr. Hercule found the Plaintiff unprofessional and recommended that she be terminated.

## Plaintiff's Termination

Dr. Hercule sent the letter regarding the meeting to his superior, Dr. Ogunsanwo. As RMD, Dr. Hercule was Plaintiff's direct supervisor. As Assistant Secretary for the Office of Health Services, Dr. Ogunsanwo was Dr. Hercule's supervisor, and the ultimate decision-maker in this case. Based on Dr. Hercule's letter detailing Plaintiff's insubordination and his recommendation that she be terminated, Dr. Ogunsanwo considered

Plaintiff's refusal of the reassignment to be a failure to follow a direct order, constituting insubordination, which was the basis for his decision to terminate Plaintiff. Plaintiff was terminated on September 3, 2012.

### Florida Department of Corrections Investigation

Six months after being terminated the Plaintiff filed a Charge of Discrimination based on gender and retaliation with FCHR on March 26, 2013. On April 9, 2013, the Department of Corrections, Office of the Inspector General was assigned an EEO, Complaint of Discrimination case (Sex and Retaliation) from the FCHR. Kelley C. El-Urfali, the Florida Department of Corrections EEO investigator, initiated an investigation. After reviewing documents and interviewing the Plaintiff, the investigator Kelley C. El-Urfali concluded that there was no cause to believe the allegations made by the Plaintiff have occurred.

### Corizon Employment

After Plaintiff was terminated, the Department privatized most of its health care through Corizon Health Care ("Corizon"), including health care at NWFRC. Plaintiff sought employment through Corizon to resume working at NWFRC.

However, the only evidence that Dr. Ogunsanwo *may* have communicated with Corizon is an email dated May 14, 2014, indicating the

intent to seek approval from the Department. There are no emails evidencing direct communications between Corizon and Dr.Ogunsanwo. Plaintiff admits she does not know for a fact that Dr. Ogunsanwo prevented her from being hired by Corizon. Furthermore, nothing in the record indicates that Dr. Ogunsanwo was aware of the Plaintiff's 2013 Charge of Discrimination that was dual-filed with the FCHR and EEOC until counsel notified him of such in 2015 (two years after the alleged retaliatory incident).

## Plaintiff Files EEOC Complaint

On October 18, 2014, Plaintiff filed another Charge of Discrimination complaint. The complaint was against Dr. Ogunsanwo based on retaliation with the U.S. Equal Employment Opportunity Commission. On November 29, 2014, Inspector Debra Arrant was assigned to investigate the case. After the investigation, Debra Arrant concluded that the preponderance of the evidence does not establish the claim for retaliation.

## Memorandum of Law

### I.   The Burden-Shifting Analysis Applies to Plaintiff's Claims

Under the McDonnell Douglas burden-shifting framework, if an employee establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate non-discriminatory, non-retaliatory reason for taking the challenged action. McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-803 (1973); Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-256 (1981). Plaintiff's Title VII and FCRA are both subjects to this analysis. See *Castro v. School Bd. of Manatee County, Fla*., 903 F. Supp. 2d 1290, 1301 (M.D. Fla. 2012). In this regard, the Florida Department of Corrections' burden is "exceedingly light." *Meeks. V. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) (quotations omitted). Once the Florida Department of Corrections articulates its reasons for the challenged decision, any presumptions of discrimination or retaliation created by the establishment of the prima facie case disappear. *See Sullivan v. Nat'l Railroad Passenger Corp*., 170 F. 3d 1056, 1059 (11th Cir. 1999). Plaintiff then bears the burden of showing the Florida Department of Corrections reason for termination – insubordination – was a pretext. *Cooper v. S. Co*., 390 F. 3d 695, 725 (11th Cir. 2004).

## II.   There is No Evidence of Gender Discrimination

Plaintiff alleges that she was treated differently than similarly situated employees of the Florida Department of Corrections who were male and was subjected to poor treatment because of her gender. To establish a *prima facie* claim for gender discrimination under Title VII and FCRA against the Florida Department of Corrections, Plaintiff must establish four elements:

1.  she is a member of a protected class;

2. she was qualified for the position;

3. she suffered an adverse employment action; and

4. she was replaced by a person outside her protected class or was treated less favorably than a similarly situated comparator outside her protected class.

*Maynard v. Board of Regents of Div. of Univ. Dep't of Ed.*, 342 F.3d 1281, 1289 (11th Cir. 2003). Title VII and FCRA also requires that gender must be the reason that an employer acted adversely against the employee. Thus, the Plaintiff must prove that gender was the "but-for" cause of the employer's adverse decision. This can be proven by direct or circumstantial evidence.

Here, there is absolutely no direct evidence of gender discrimination. Plaintiff cannot point to any adverse decision, which raises any inference of discrimination motivated by Plaintiff's gender. Moreover, the non-gender reasons for her termination (Plaintiff's admitted to placing unsigned DNRs in inmates medical files and her insubordination towards her supervisors) also establish non-discriminatory reasons for being terminated.

## A. Florida Department of Corrections' Terminated Plaintiff for Legitimate and Non-Discriminatory Reasons

Assuming Plaintiff establishes a prima facie case, the burden shifts to the Florida Department of Corrections' to articulate legitimate, non-discriminatory, non-retaliatory reasons for the adverse action. Once

articulated, the burden then shifts back to Plaintiff to show that every reason proffered is a pretext to engage in impermissible discrimination or retaliation. *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981).

Florida Department of Corrections' burden in this regard is exceedingly light. *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). Here, the Florida Department of Corrections terminated Plaintiff for her insubordination. This reason is more than sufficient to carry the Florida Department of Corrections' intermediate burden. Plaintiff cannot prove that this legitimate reason was a pretext for discrimination or retaliation under Title VII or FCRA.

To show pretext, Plaintiff must show each of the Florida Department of Corrections' proffered reason was not the reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Lucy v. Ga.-Pac. Corrugated I, LLC*, 497 F. App'x 870, 871 (11th Cir. 2012) (citation omitted). Plaintiff must show the Florida Department of Corrections' reasons for terminating her were pretextual by revealing "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the

proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." *Cooper,* 390 F.3d at 725. Plaintiff bears the burden of showing that **each reason is false, and that discrimination was the real reason**. *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 511 (1993) (emphasis added); *Rea v. Dist. Sch. Db. Of Pasco Cnty*., 24 F. Supp 1213, 1217 (M.D. Fla. 2014) (noting plaintiff cannot prove pretext by merely provided conclusory, uncorroborated statements). Pretext is not established merely by showing that the reasons upon which the adverse action was founded were mistaken; rather, Plaintiff must present evidence that the City did not possess an honest belief in the reasons underlying the termination. *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002).

## B. Florida Department of Corrections' Believed Plaintiff was Insubordinate

Plaintiff will likely challenge the Florida Department of Corrections' termination by claiming she was not insubordinate. However, the focus at the pretext stage "is not whether the employee agrees with the reasons that the employer gives for the [challenged action], but whether the employer was really motivated by those reasons." *Standard v. A.B.E.L. Services, Inc*., 161 F.3d 1318, 1333 (11th Cir. 1998). It is not enough to show that Defendant was mistaken in its beliefs; Plaintiff must show the Florida

Department of Corrections' belief was not credible. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470-71 (11th Cir. 1991).

Here, on August 15, 2012, Dr. Hercule, Plaintiff's supervisor informed Plaintiff that she would be temporarily reassigned to Holmes C.I. However, Plaintiff refused to be reassigned and stated that she would rather take annual leave. As a result, Dr. Hercule and Dr. Ogunsanwo, in good faith and with reasonable grounds, believed the Plaintiff was insubordinate on August 15, 2012. Plaintiff cannot present this Court with any credible evidence to prove the Florida Department of Corrections' beliefs were unworthy of credence or that the Florida Department of Corrections intended to discriminate against her.

## C. Plaintiff Cannot Show She Was Treated Differently

Plaintiff may argue that she was treated differently with respect to the discipline for insubordination. To establish disparate treatment, Plaintiff must provide a list of comparators that must be "similarly situated in all relevant aspects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). In other words, the comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision made by an employer. Id. Courts have analyzed the following factors to assess similarity between a plaintiff and comparators:

- They must have dealt with the same supervisor. *See Ren v. University of Cent. Fla. Bd. of Trustees*, 390 F. Supp. 2d 1223,1231 (M.D. Fla. 2005).

- They must have been subject to the same standards. *Id.*

- They must have similar job related characteristics *See Wehunt v. RW Page Corp*., 352 F. Supp. 2d 1342, 1351-52 (M.D. Ga. 2004).

Here, Plaintiff only lists two comparators, Dr. Jean Maurice Dure and Dr. Josue Jorge-Caraballo. Both of them are male comparators that worked as hospitalists in RMC Hospital. However, neither of the alleged comparators committed the same or similar infraction, nor did they exhibit the any comparable behavior that Plaintiff exhibited during her employment. As such, Plaintiff cannot use them as examples to establish differential treatment.

## III.    There is No Violation of The Equal Pay Act

In order to establish an Equal Pay Act claim, the Plaintiff must show that an actual employee of the opposite sex is performing a substantially similar job for a higher wage at the same establishment. *See Houck v. Virginia Polytechnic Institute*, 10 F.3d 204, 206-07 (4th Cir. 1993). The record establishes that the Department had a job classification system which dictated pay ranges for physicians based on the region of the state where

they worked. For example, those physicians working in the South Florida region (region IV) tend to receive higher wages due to a higher demand for doctors and a higher cost of living in the South Florida region. Pay rates also take into account the physician's classifications and whether the physician is Board Certified, Board Eligible, or Non-Board Eligible. Each employee within a given category receives the same or similar salary.

The Department has retained experts Chester Palmer and Joshua Gotkin of ERS Group to review pay classifications, pay ranges, and actual salaries for physicians who worked for the Department at the time of Plaintiff's employment.  Among the findings, the experts determined that in terms of salaries, "females did better than males by an average of $2,615.17" and that looking at the percentage difference "females did better than males by an average of 1.9% of salary."

Plaintiff fails to meet the strict standard of proving that she performed substantially similar work for less pay.  Plaintiff's job title and position was that of Chief Health Officer at NWFRC, where she testified "you have the intake, you have to get those—you reclassify those inmates and you send them to the institution." Plaintiff offers just two comparators, Dr. Jean Dure and Dr. Jorge Caraballo, and Plaintiff admits that both men work at the

hospital at RMC as hospitalists. Moreover, according to her testimony, Plaintiff never worked as a hospitalist at any time for the Department.

Nowhere in the record is it shown that a CHO at a reception center performs substantially similar work to that of a hospitalist working at RMC. The record is devoid of any evidence to indicate that the actual duties of Plaintiff and the comparators she has identified (Dure and Caraballo) are similar in terms of the work that each performed.  Plaintiff was a CHO working in a prison reception center, whereas Dure and Caraballo are hospitalists assigned to take care of inmates who are admitted to the Department's acute care hospital (RMC). Hospitalist duties include providing emergency health care to inmates with life endangering traumatic injuries, performing minor emergency procedures and elective minor surgical procedures, and investigating cases of contagious diseases and taking necessary action to ensure the disease is isolated. These duties are described in the position descriptions and vary from a CHO's duties. It has been held that "the controlling factor under the Equal Pay Act is job content"—the actual duties that the respective employees are called upon to perform. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1049 (5th Cir. 1973), *cert. denied*, 414 U.S. 822 (1973).  Therefore, since the duties of a

CHO differ from those of a hospitalist, there is established claim for a violation of the Equal Pay Act.

Plaintiff bases her case for violation of the Equal Pay Act on a list she personally compiled from the Department of Health's website in 2012, wherein she found Dr. Caraballo and Dr. Dure and listed them as comparators. A list compiled by Plaintiff, arbitrarily pulled from the Department of Health's website without any investigation as to the credentials or qualifications of those Plaintiff alleges to be comparators, does not demonstrate gender discrimination or that the Defendant "engaged in policies and practices of employment which willfully, or, in the alternative, recklessly discriminate against the Plaintiff on the basis of her sex by paying her a lesser rate of pay than that paid to males who were performing or were to have performed the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions within Defendant." Plaintiff failed to note that the two comparators she listed to support her claim, Dr. Caraballo and Dr. Dure, are both hospitalists, *not* CHOs like herself, and thus it is erroneous to compare their salaries and pay rates to Plaintiff's salaries and pay rates as their positions are not the same and do not entail the "same or substantially similar job duties which

require equal skill, effort, and responsibility, and under the same working conditions with Defendant."

It has been held that "[i]n this circuit, plaintiffs who attempt to establish a prima facie case under the *McDonnell Douglas* test must show that the comparator is similarly situated in all relevant aspects. Furthermore, even when comparing Plaintiff's salary to that of other CHOs who do perform same or similar job duties to the Plaintiff, Plaintiff is paid at the same or higher rate as that of male CHOs. Analyses performed by the Department's expert witnesses, Dr. Chester I. Palmer and Dr. Joshua A. Gotkin, determined that:

> We have performed three analyses comparing the salaries of female senior physicians with those of male senior physicians. Our analyses looked only at salary by gender, not taking into account the properties of particular positons. The average salary for female senior physicians was slightly higher than that of male senior physicians, but not by a statistically significant amount; that is, the difference was within the range to be expected from random fluctuation. The other two analyses took into account variables known to affect salaries, such as whether the physician is a psychiatrist, or suspected to affect salaries, such as years of experience. Both these analyses indicated that female senior physicians were on the average paid more than comparable male senior physicians, but not by a statistically significant amount. Thus, overall, our analyses **do not suggest discrimination against female senior physicians in salaries.** *(emphasis added)*

For the foregoing reasons, Plaintiff can prove no violation of either Title VII or the Equal Pay Act.

## IV.    Plaintiff Cannot Establish a Prima Facie Case for Retaliation

To establish a prima facie case for retaliation under FCRA a plaintiff must show that:

1. she engaged in a statutorily protected activity;
2. she suffered materially adverse employment action; and
3. there is a causal connection between her participation in the protected activity and the adverse employment action.

*Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). Here, Plaintiff alleges that Dr. Ogunsanwo blocked her from receiving employment with Corizon.

## A. There is No Causation Between Any Protected Activity

Plaintiff bears the burden of demonstrating that her not receiving employment with Corizon was causally connected with her charge of discrimination complaint on March 26, 2013. Plaintiff's retaliation claim is subject to the "but-for" causation requirement established by the U.S. Supreme Court in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517(2013). The standard for causation is high; Plaintiff must show that his "protected activity was a "but-for" cause of the alleged adverse employment action." *Nassar*, 133 S. Ct. at 2534. In addition, Plaintiff must show the decision-maker was aware of her protected conduct, and the protected activity and adverse action were not wholly unrelated. *See*

*Davis v. Florida Agency for Health Care Admin*., 2015 WL 2344108 (11th Cir. 2015) (citing *Kidd v. Mando Am. Corp*., 731 F.3d 1196, 1211 (11th Cir. 2013)). Here, Plaintiff cannot show that her protected activity was the "but-for" cause for the materially adverse actions, her not receiving employment with Corizon. Nor can she provide evidence that shows that Dr. Ogunsanwo knew of her protected activity or was contacted by Corizon management regarding her employment. The only evidence that points to any such communication are emails between Corizon management discussing the possibility of speaking with Dr. Ogunsanwo.

Furthermore, while courts interpret the causal link requirement broadly, the causal link must be demonstrated by a close temporal proximity between the protected activity and the alleged adverse action. *Redd v. United Parcel Service, Inc.*, 615 F. App'x 598, 606 (11th Cir. 2015). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Thomas v. Cooper Lighting, Inc.*, 506 F. 3d 1361, 1364 (11th Cir. 2007). Conversely, here, Plaintiff filed a Charge of Discrimination on March 26, 2013, and there is no evidence that Corizon may have even approached Dr. Ogunsanwo until the following year—specifically, in an email dated May 14, 2014. As the Eleventh Circuit has held, "reliance on 'mere curious timing coupled with speculative

theories' is not sufficient to impute knowledge and establish a prima facie case of retaliation." *Mitchell v. Mercedes Benz U.S.*, 2015 WL 919986 (11th Cir. 2015).  As the above-referenced case law suggests, a period of several months does not establish the requisite temporal proximity as required in this circuit. Here, there is a period of more than 14 months between the protected activity and the alleged adverse employment. Thus, the requisite temporal proximity is not established in the instant case.

Although Dr. Ogunsanwo does not specifically recall Corizon contacting him, he testified that if he was contacted, he probably would have told Corizon management that Plaintiff was previously terminated by the Department. Even assuming arguendo that Corizon management did contact Dr. Ogunsanwo, the Department is contractually prohibited from approving a former employee who was previously terminated for employment with the company.  Under the terms of the Department's contract with Corizon, the company is prohibited from hiring former employees who have been terminated by the Department. Under Section II (AA)(3)(f), the contract states:

> Department employees terminated at any time by the Department for cause may not be employed or provide services under this Contract.

Thus, Plaintiff's retaliation claim cannot be established due to the lack of "but-for" causation, the temporal proximity between the protected activity and alleged adverse employment action, and the contract between Corizon and the Florida Department of Corrections prohibits Corizon from firing employees that were terminated by the Department of Corrections for cause.

## V.   Plaintiff's Entitlement to Damages is Limited By Her Failure to Mitigate

In a retaliation claim, Plaintiff must show she made a reasonable good faith effort to mitigate damages by seeking employment that is substantially equivalent to the position from which she was terminated. *See EEOC v. Joe's Stone Crab, Inc*., 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998) (citations omitted).

Here, Plaintiff will argue that she did seek employment with Corizon to be a physician at NWFRC, which is the same institution she was working at prior to being terminated. However, after not receiving the employment position with Corizon she has not applied for any other positions. In addition, there is no evidence that shows Plaintiff made any effort to apply for any positions. In fact, Plaintiff admits that after not receiving the job with Corizon she did not seek any other employment for the past four years and considers herself retired.

Plaintiff seeks front pay, which is a remedy that reimburses a prevailing plaintiff for lost compensation between judgment and reinstatement or in lieu of reinstatement. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846, 121 S. Ct. 1946, 150 L. Ed. 2d 62 (2001). While front pay may be appropriate in certain circumstances, the duty to mitigate applies to front pay awards also. *Richardson v. Tricome Pictures & Productions, Inc*., 334 F. Supp. 2d 1303, 1318 (S.D. Fla. 2004). Any award of front pay in this case in the event Plaintiff prevails in her suit must be limited accordingly.

## Conclusion

The Florida Department of Corrections cannot be held liable for the alleged gender discrimination, violation of the Equal Pay Act, and the retaliation claim. There is no direct or circumstantial evidence that demonstrates the Florida Department of Corrections' decision to terminate Plaintiff was based on gender or retaliation for protected activity. In addition, there is no evidence that shows the Florida Department of Correction's paid Plaintiff lesser wages because of her gender. Finally, there is no evidence that the Department prevented the Plaintiff's hire by Corizon to retaliate for her making a complaint or any other protected disclosure.

Respectfully submitted this 12th day of April 2016.


/s/ Jeffrey S. Howell
_____

**JEFFREY S. HOWELL**
Florida Bar No. 0793840
Email: jeff@phipps-howell.com

**PHIPPS & HOWELL**
201 South Monroe Street, 4th Floor
Tallahassee, Florida 32301
Telephone:  850-222-7000
Facsimile:   850-681-3998

*Attorney for Defendant,*
*Department of Corrections, State of*
*Florida*


## CERTIFICATE OF WORD COUNT

This document contains 4,595 words.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:  Marie Mattox at marie@mattoxlaw.com.

/s/ Jeffrey S. Howell
_____
**JEFFREY S. HOWELL**